**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | |
| | ) | |
| Suppressed | ) | Case No. 20 M 118 |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The Court grants the motion ("the Motion"; D.E. 8), under 18 U.S.C. § 3006A(a)(1), to appoint counsel under the Criminal Justice Act ("the Act") in this pre-indictment, pre-information matter in which the uncharged target ("the Target") of the federal investigation is not in custody and wishes to negotiate a plea agreement with the government. Although the Motion is unopposed and undisputed (D.E. 13), the Court must ensure that the Act authorizes the requested relief. The magistrate judge's jurisdiction over this matter stems from 18 U.S.C. § 636(a)(1), in that the government initiated the matter by filing an application for a search warrant under Federal Rule of Criminal Procedure 41. (D.E. 1.)

Attorney representation "shall be provided for any financially eligible person who … is entitled to appointment of counsel under the sixth amendment to the Constitution." 18 U.S.C. § 3006A(a)(1)(H). The Motion argues that the financially eligible Target is entitled to representation under the Sixth Amendment and thus under Section 3006(a)(1)(H). Supplemental Statement in Support of Motion for Appointment of Defense Attorney ("Supp."); D.E. 11 at 1. The Motion also argues that the Target has statutory access to representation because he or she faces loss of liberty in "a case, and federal law requires the appointment of counsel." *Id.*, citing 18 U.S.C. § 3006A(a)(1)(I). The Court has decided the Motion based on the Target's entitlement to

appointment of counsel under the Sixth Amendment per Section 3006A(a)(1)(H) during plea negotiations before the lodging of a formal charge.

The Sixth Amendment right to counsel applies during plea negotiations. *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021), citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). But decisions such as *Bridges* and *Lafler* involved plea negotiations that had begun after the defendants in those cases were charged formally, and the general rule is that the Sixth Amendment right to counsel ordinarily does not attach at all until the initiation of formal adversary judicial proceedings. *See Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality). The answer to whether the Sixth Amendment right to counsel attaches during pre-indictment or pre-information plea negotiations is therefore more nuanced. Federal courts of appeal have not approached uniformly the question of whether, in some circumstances, the relationship between the government and a yet-to-be-charged person can be sufficiently adversarial to trigger the person's Sixth Amendment right to counsel, particularly during pre-charging plea negotiations. Some courts of appeal apply a "bright-line" rule holding that the Sixth Amendment right to counsel never attaches before the government initiates formal adversary judicial proceedings. *See United States v. Heinz*, 983 F.2d 609, 612-13 (5th Cir. 1993); *Turner v. United States*, 848 F.3d 767, 773 (6th Cir. 2017) (*Turner I*), *rehearing en banc granted, vacated by* 865 F.3d 338 (6th Cir.), and *on rehearing en banc*, 885 F.3d 949 (6th Cir. 2018) (*Turner II*); *United States v. Hayes*, 231 F.3d 663, 675 (9th Cir. 2000); *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1117 (10th Cir. 1998); *United States v. Waldon*, 363 F.3d 1103, 1112 n.3 (11th Cir. 2004); and *United States v. Sutton*, 801 F.2d 1346, 1365-66 (D.C. Cir. 1986). Other courts of appeal, including the Seventh Circuit, have declined to adopt a bright-line rule and have recognized or indicated that under certain limited circumstances, the Sixth Amendment right to counsel could attach before the initiation of formal adversary judicial

proceedings. *See Roberts v. Maine*, 48 F.3d 1287, 1290-91 (1st Cir. 1995); *United States v. Burgess*, No. 96-4505, 141 F.3d 1160, 1998 WL 141157, at *1-2 (4th Cir. Mar. 30, 1998); and *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir. 1992). The Sixth Circuit has opined that the foregoing two divergent views do not represent a genuine circuit split because none of the decisions espousing the latter view had held expressly that the Sixth Amendment right did attach before formal charging. *Turner II*, 885 F.3d at 954. A few district courts have found that the Sixth Amendment right to counsel attaches during pre-indictment plea negotiations. *See United States v. Wilson*, 719 F. Supp. 2d 1260, 1266-67 (D. Ore. 2010); *United States v. Busse*, 814 F. Supp. 760, 763-64 (E.D. Wis. 1993). The gist of the reasoning behind *Wilson* and *Busse* is that plea negotiation is a critical stage of the proceeding, and even if formal judicial proceedings have not begun, the prosecution has committed itself to bring charges against a target when it offers or discusses a potential plea disposition. *Wilson*, 719 F. Supp. 2d at 1267; *Busse*, 814 F. Supp. at 763-64.

Even as the Sixth Circuit applied the bright-line rule (no Sixth Amendment right of counsel before formal judicial proceedings) over the years, several of the Sixth Circuit opinions and judges expressed considerable misgivings about that approach when applied to pre-indictment plea negotiations. The Sixth Circuit's reticence about its bright-line rule had its foundation in a dissent by Judge Thomas Anderson Wiseman, Jr. from the majority's holding in *United States v. Sikora*, 635 F.2d 1175 (6th Cir. 1980), that the appellant did not have a right to counsel when he was neither in custody nor the subject of adversary proceedings at the time he made certain incriminating statements. Judge Wiseman's *Sikora* dissent opined that the Sixth Amendment right to counsel should have been held to have attached at the time of pre-indictment plea negotiations. *Id.* 635 F.2d at 1180-82 (Wiseman, J., dissenting in part).

3

Judge Wiseman's reasoning began with the premise that the *Kirby* plurality "identified the initiation of judicial proceedings [for purposes of determining when the Sixth Amendment right to counsel attaches] as the point when the government has committed itself to prosecute, and the adverse positions of the parties have solidified." *Id.* at 1181. Ordinarily, then, the *Kirby* plurality viewed the initiation of formal judicial proceedings as the point at which a defendant finds himself "'faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" *Id.*, quoting *Kirby*, 406 U.S. at 689. Judge Wiseman then reasoned that *Kirby* did not foreclose the possibility that adversity between the government and the defendant could occur even before arrest: "If in fact the adverse positions of the parties have solidified at some point earlier than arrest and the defendant has been 'faced with the prosecutorial forces' of the government, *Kirby* clearly suggests that the right to counsel attaches at that point, despite the absence of 'formal' procedures." *Id.* Judge Wiseman found it "obvious" that even before charging, "the government had made a commitment to prosecute" the individual once it "entered into plea negotiations" with him. *Id.*

> Once the government enters into plea bargaining, it is apparent that the adverse positions of the parties have solidified, and the prospective defendant is plainly faced with the prosecutorial powers of the government. Consequently, the right to counsel should begin with the commencement of plea bargaining in those rather unusual cases where plea bargaining precedes formal charges.

*Id.*

Twenty years after *Sikora*, the Sixth Circuit cited Judge Wiseman's dissent in expressing reservations about its holding that no Sixth Amendment right attaches to pre-indictment plea negotiations. *United States v. Moody*, 206 F.3d 609, 614-15 (6th Cir. 2000). The panel in *Moody* bluntly criticized the bright-line rule it applied:

> We do not favor this bright line approach because it requires that we disregard the cold reality that faces a suspect in pre-indictment plea negotiations. There is no question in our minds that at formal plea negotiations, where a specific sentence is

4

offered to an offender for a specific offense, the adverse positions of the government and the suspect have solidified. Indeed, it seems a triumph of the letter over the spirit of the law to hold that Moody had no right to counsel in his decision to accept or deny the offered plea bargain only because the government had not yet filed formal charges. We are faced with the ponderable realization that this is an occasion when justice must of necessity yield to the rule of law ….

*Id.*

Then, more recently in *Turner I*, the Sixth Circuit echoed *Moore* in expressing concerns about the bright-line rule that it affirmed once again, quoting what the *Turner I* opinion called "the well-reasoned words" of Judge Wiseman in his dissent in *Sikora*:

The Court has extended the right in new contexts that present the same dangers that gave rise to the right originally, those dangers being confrontation with the procedural system, the expert prosecutor, or both. In the plea bargaining context, the accused is presented with both of these dangers, and therefore those persons who enter the plea bargaining process before formal charges have been filed should have the protection of the Sixth Amendment…. [W]hen the government begins plea negotiations with a citizen who has not been formally charged, he is just as surely faced with the "prosecutorial forces of organized society" as the defendant who has been formally introduced into the system.

*Turner I*, 848 F.3d at 773 (citing *Moody*, 206 F.3d at 614-15 (quoting *Sikora*, 635 F.2d at 1182) (Wiseman, J., dissenting in part))).

All of which brings us to the Seventh Circuit's treatment of whether the Sixth Amendment can attach even before formal adversary judicial proceedings if matters between the government and the uncharged target of an investigation reach a sufficiently critical, adversarial stage. The Seventh Circuit in *Larkin* prescribed a more flexible approach that allows for a scenario in which justice and the rule of law may co-exist on consideration of the Motion. *Larkin* involved a defense challenge to a pre-indictment lineup in which two then-uncharged defendants were not represented by counsel and argued that they had a Sixth Amendment right to such representation at the lineup. 978 F.2d at 969. The Seventh Circuit affirmed the defendants' convictions that the government obtained after the district court denied the defendants' suppression motions based on their being

5

uncounseled at the pre-indictment lineup. *Id.* at 967, 969-70. The relevant guidance *Larkin* provides this Court on the instant Motion was in the following passage, in which the Seventh Circuit declined to adopt the bright-line rule and allowed for the prospect of the Sixth Amendment right to counsel attaching before formal charges if, under the circumstances, the government has become the uncharged person's adversary instead of merely an investigator or fact-finder:

> It is axiomatic that the right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689 (1972) (plurality). Accordingly, had the lineup occurred after the grand jury indicted Larkin and Bolduc, the government without question would have been obliged to provide counsel, and its failure to do so would have abridged the sixth amendment and warranted suppression. *United States v. Wade,* 388 U.S. 218, 237–38 (1967). The lineup in this case, however, occurred approximately three months prior to Larkin's and Bolduc's indictment, and the right to counsel presumptively does not attach at pre-indictment lineups. *Kirby,* 406 U.S. at 688–89, 92 S. Ct. at 1881–82; *Hall v. Lane,* 804 F.2d 79, 81–83 (7th Cir. 1986), *cert. denied,* 480 U.S. 921, 107 S. Ct. 1382, 94 L.Ed.2d 696 (1987). A defendant may rebut this presumption by demonstrating that, despite the absence of formal adversary judicial proceedings, "the government had crossed the constitutionally significant divide from fact-finder to adversary." *Hall,* 804 F.2d at 82 ….

*Larkin*, 978 F.2d at 969. Having determined that the government had not crossed the line from fact-finder to adversary at the time of the *Larkin* defendants' pre-indictment lineup, the Seventh Circuit held that the defendants' Sixth Amendment rights had not attached at that time, and thus the Seventh Circuit had no basis to reverse the district court's denial of the motion to suppress the evidence of the lineup identifications. *Id.* at 969-70. The *Larkin* defendants could not rebut the Seventh Circuit's presumption that the right to counsel had not attached at the time of the lineup, even as the Seventh Circuit commented that obtaining counsel for the defendants at the lineup would have been a good idea. *Id.*

Obtaining counsel for an uncharged person with whom the government is negotiating a plea agreement is an even better idea, for the reasons the Sixth Circuit expressed in *Moody*. 206

F.3d at 615-16.  This Court grants the Motion not because appointment of counsel is a good idea, but because the Court finds that the Act authorizes appointment of counsel now that the Sixth Amendment right of counsel has attached.  No indictment or information has been filed, but the Motion establishes that the Target and the government are in plea negotiations that will result or are likely to result in the filing of an information, to which the Target may plead guilty or at least now will have the choice as to whether to plead guilty or to contest formal accusations by the government if he or she does not plead guilty.  *See* Motion at 1-2.  The government and the Target are engaging in a plea negotiation and thus embarking upon a path of discussing the range of formal charges that may be filed, along with the likelihood of the filing of a charge to which the Target will consider admitting in a guilty plea.

Negotiation by its nature involves compromise to avoid the risk of more onerous consequences, and the sword of Damocles hanging over criminal plea negotiations is the possibility that if no agreement is reached, the government will lodge more serious charges or will seek a more severe criminal punishment than might be available in a negotiated plea agreement. Consequently, now that plea negotiations have begun with the Target in this matter, the government has committed itself to a prosecution of the Target, and the respective positions of the Target and the government have solidified to the point at which they are adversarial.  The government no longer is merely investigating the Target.  The government no longer is simply a fact-finder.  The Target is in a position in which he or she is now faced with the government's prosecutorial forces, even in the absence of formal proceedings.  Practically speaking, the negotiation of the pre-indictment or pre-information plea can be and often is a more critical stage than the lodging of the formal charge.  In a case charged by indictment or information after plea negotiations, the negotiations either pre-determine the outcome of the criminal prosecution or, if

no agreement was reached, substantially influence the charging decision and/or the eventual outcome in most cases. To hold that a person not yet charged formally has no right to counsel in the critical plea negotiation stage but may have appointed counsel only after the lodging of the formal charge that arose from the negotiations is to deprive that person of the right to counsel when he or she needs counsel the most. The result of the bright-line test is therefore counterintuitive at best, and not surprisingly, the Sixth Circuit itself has lamented this victory of formalism over the true spirit of the Sixth Amendment. *Moore*, 206 F.3d at 615-16; *Turner I*, 848 F.3d at 773.

In the Seventh Circuit, though, *Larkin* offers us the flexibility of determining that even if the formal indictment or information has not yet been filed, the Target and the government are nonetheless adversaries, to the same effect as if the formal charge had been filed. This result is entirely in harmony with *Kirby*. The Court has little trouble concluding that under *Larkin* and the circumstances presented in the Motion, the Target has rebutted adequately the presumption against the right of counsel attaching during the pre-charging plea negotiations. The Sixth Amendment right of counsel attaches so that the Target is entitled to appointment of counsel under Section 3006A(a)(1)(H). In finding a sufficient basis to grant the Motion under Section 3006(a)(1)(H), this Court does not reach the Motion's argument for appointment of counsel under Section 3006A(a)(1)(I).[1]

---

[1] On April 5, 2022, this Court entered a sealed version of this Memorandum Opinion and Order. (D.E. 14.) After providing the parties with an opportunity to object to the unsealing of the opinion (D.E. 15), *see Pepsico v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995), and after having received no objection to unsealing (D.E. 16), the Court enters this unsealed Memorandum Opinion and Order with minor editing from the sealed version. The sealed opinion (D.E. 14) is hereby vacated as superseded by this Memorandum Opinion and Order. The remainder of this matter remains under seal at this time.

For the foregoing reasons, the Motion is granted.

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 7, 2022**